IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Shanita McKnight, | ) | Civil Action No. 4:11-2415-TLW |
| | ) | Cr. No. 4:07-787 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| The United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter comes before the Court for consideration of the pro se motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by the Petitioner, Shanita McKnight (hereinafter "Petitioner" or "Defendant").

On June 26, 2007, a federal grand jury returned an Indictment against Petitioner, charging her and a co-defendant with one count of conspiracy to possess with intent to distribute and distribute 50 grams or more of cocaine base (commonly known as crack cocaine) and 5 kilograms or more of cocaine in violation of Title 21 U.S.C. § 846; and charging defendant with one count of extortion by a public employee. (Doc. #2). On July 2, 2007, Petitioner entered a plea of not guilty. (Doc. # 13). Petitioner proceeded to trial and on October 21, 2008, a jury found her guilty as to both counts. (Doc. #130.) On May 27, 2009, the district court sentenced Petitioner to 240 months imprisonment with judgment entered on May 29, 2009. (Doc. # 162). This term of imprisonment consisted of 240 months as to Count 1 and 240 months as to Count 2, with all such terms to run concurrently. Petitioner pursued a direct appeal, and on July 6, 2010, the United States Court of Appeals for the Fourth Circuit issued an opinion affirming Petitioner's conviction and sentence.

1

(Docs # 185-186). On September 8, 2011, McKnight, proceeding pro se, filed the current motion under 28 U.S.C. § 2255 asserting four grounds for relief. (Doc. # 187). An affidavit by Petitioner's trial counsel, Joseph Henry, was filed on December 2, 2011. (Doc. # 199). On December 12, 2011, the Government filed a motion for summary judgment and a supporting memorandum in opposition to Petitioner's petition. (Doc. # 200). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised by Order filed December 29, 2011 that she had thirty-four days to file any material in opposition to the Government's motion. (Doc. # 203). Petitioner filed responses to the Government's motion on February 2, 2012, March 15, 2012, and April 13, 2012. (Docs. # 210, 214 & 218). The matter is now ripe for decision.

## 28 U.S.C. § 2255

Title 28, Section 2255 of the United States Code provides that a prisoner in custody under sentence of a federal court may file a motion in the Court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255. "Generally, 28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004). In Leano, the District Court noted that this is "the proof needed to allege a constitutional error," and that "[t]he scope of review of non-constitutional error is more

2

limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's pro se motion, and finds that no hearing is necessary.

## STANDARD OF REVIEW

The Government has moved for summary judgment as to all grounds raised by Petitioner. (Doc. # 200). In examining a motion for summary judgment, the Court must determine whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249. Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon bald assertions contained in the pleadings. See Celotex, 477 U.S. at 324. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish

3

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Celotex, 477 U.S. at 322-23 (1986).

## **DISCUSSION**

Petitioner asserts four grounds for relief, all of which are based upon a theory of ineffective assistance counsel. (Doc. # 187). Petitioner's claims set forth verbatim are as follows:

1. Ineffective assistance of counsel. On days one and two of the trial, counsel disclosed that he was present at my post-arrest interview by law enforcement where I allegedly made statements that the Government was offering as "admissions" as evidence of my guilt at trial.
    Counsel stated that the law enforcement officer's statements to be offered in evidence were false and that counsel had recollection and notes of the interview and that he would need to make a record to correct these statements, which he characterized as perjury. Trial counsel said he was not going to be a witness but was alerting the court to this "unusual" problem. The Assistant United States Attorney, who was the Government's trial counsel, told the court that trial counsel would not be able to "testify" during his cross-examination.
    Although raised on direct appeal, the Court of Appeals did not decide the issue, finding that a "claim for ineffective assistance of counsel should be raised by a habeas corpus motion under 28 U.S.C. sec. 2255 in the district court."

2. At sentencing, trial counsel did not challenge the drug amounts attributed to Appellant. The trial witnesses established that I never possessed any cocaine but was being held accountable for a maximum offense level because I occasionally tipped off drug dealers about police investigations that were occurring in the jurisdiction where they distributed drugs. Disturbed about the role I played in these distributions, the Sentencing Court provided a 2-level variance under Booker and imposed a 240 mandatory active sentence.
    Had trial counsel challenged the relevant conduct calculations under the scope of agreement analysis required by guideline section 1B1.3, the sentencing court

4

would have attributed far less relevant conduct to this defendant because under this analysis, my warnings did not significantly facilitate the dealers entire drug distributions in and around the nightclub owned by my family members.

Although raised on direct appeal, the Court of Appeals did not decide the issue, finding that a "claim for ineffective assistance of counsel should be raised by a habeas corpus motion under 28 U.S.C. sec. 2255 in the district court."

3. Ineffective assistance of counsel by failing to raise, by motion for variance, the disparity instituted by the guidelines between distributors of crack and powder cocaine. The guidelines call for an increase in offense level for crack offenders that is based on a quantity ratio of 100 to 1 between crack and powder cocaine offenders.

The Supreme Court has recently held that is not error for sentencing courts to impose Booker variances when the sentencing court reduces this ration to diminish disparity.

But trial counsel neglected to raise this disparity at sentencing. Had he objected, it is probable that the trial court would have reduced the 100 to 1 ratio and further lowered the Appellant's 20-year sentence Thus, because he did not object to drug quantities or to the 100 to 1 ratio, trial counsel did not provide effective assistance of counsel to me and I was prejudice.

4. I was offered a plea to plead to the extortion charge with the drug charges dropped before the jury trial was set again during trial.

Mr. Henry, my lawyer never went into any detail or explained the plea offer to me. He did not explain the sentencing range for the crimes I was charged with until after trial when he received the presentencing report.

Ineffective assistance of Counsel for failing to advise Petitioner of the sentence I was facing if [I] did not accept the plea before rejecting the plea offer. So due to lack of effective legal advice from my lawyer, Mr. Henry, I went to trial and received a much lengthier sentence that [sic] I would have received has I taken the plea offer. Had I been adequately advised by my attorney as to the sentencing ramifications of going to trial compared to the sentencing ramifications of taking the plea offered, I would have taken the plea instead of taking the case to trial.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. U.S.

5

v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (citing Williams v. Kelly, 816 F.2d 939, 946-47 (4th Cir.1987)).

Under the first prong of Strickland, we apply a "strong presumption" that a trial counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Id. (citing Strickland, 466 U.S. at 689). For a lawyer's trial performance to be deficient, his errors must have been so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. (citing Strickland at 687). The reasonableness of a lawyer's trial performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." Id. (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689).

In order to establish prejudice under Strickland 's second prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id.

The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .." Id. at 689. As the Strickland Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689. (Citations omitted).

1. Ground One

In "Ground One" of her motion, Petitioner suggests that her trial attorney had a conflict of interest because he was a witness to statements she made to a South Carolina State Law Enforcement Division ("SLED") agent who testified at her trial. Doc. # 187, p. 5. After careful review and consideration, the Court finds this claim to be without sufficient legal merit as there is no indication that Petitioner's attorney's knowledge of the statements was any different than the version to which the agent testified.

At the end of the first day of Petitioner's trial, her attorney, Joseph Henry, informed the district court of a potential issue concerning SLED Agent Johnnie Bartel, an upcoming witness in the Government's case. Doc. # 169, Trial Tr. Vol. I, 10/15/08, at 273-74. Agent Bartel had been present when Petitioner provided an incriminating statement following her arrest. Henry advised the court:

> The statement that was allegedly made by my client, it is the interpretation of what was said. I was also present during that interview, your honor, and I have notes from the interview. The recollection that I understand Mr. Bartel is planning to offer is . . . substantially different from what was said during that interview. I am not a witness in the case, but as an officer of the court, I believe it is incumbent on me to call that discrepancy to the court's attention, and to make Mr. Bartel aware if he does offer that testimony, I am going to ask the court to convene a perjury case.

Id. at 274.

The Court responded: "[W]e'll just have to deal with these matters as they arise." Id. The next day, the Government called Agent Bartel as a witness. The Assistant United States Attorney ("AUSA") asked Agent Bartel if he was present during the interview of Shanita McKnight, and whether McKnight made certain admissions during that interview. Doc. # 170, Trial Tr. Vol. II, 10/16/08, at 11. When Agent Bartel responded in the affirmative, Attorney Henry requested a sidebar and informed the court:

> This is the testimony I mentioned on yesterday, that I thought Agent Bartel was going to get into. I don't want that testimony to be heard by the jury until it's been screened, because his testimony is substantially different from what was actually said during that interview. I have my notes from that interview. I was present and I plan to challenge him on a perjury charge if he does go into what I believe he's getting ready to go into.

Id.

When the court asked Attorney Henry what specific course of action he would propose, he suggested:

> "We could let him testify, and I may need to make a record subsequent to that testimony if necessary, if he does testify, we can excuse the jury, let me make a record of what went on in that thing and we'll have a record within this record, dealing with that."

Id. at 13.

The court indicated that it would consider any request by Attorney Henry to place something on the record following cross-examination of Agent Bartel. Id. at 14.

The direct examination of Agent Bartel proceeded, and he testified that Petitioner admitted to having "tipped off" her grandmother about "police activity in and around the area of Mamie Lou's night club." Id. at 17. Agent Bartel explained that Petitioner admitted having "called her grandmother's residence 10 to 20 times to tip her off about drug activity in the area of Mamie Lou's night club." Id. at 18. Attorney Henry cross-examined Agent Bartel but did not renew his request to place a statement on the record following Agent Bartel's testimony; neither did he make any motion concerning perjury. Rather, Attorney Henry actually confirmed to the district court that "Agent Bartel's testimony did not include the objectionable information that [Henry] raised with the court." Id. at 66.

The record thus reveals that Attorney Henry was not a necessary witness, nor did any conflict arise. There is no indication that Agent Bartel's testimony differed from Attorney Henry's

recollection of the interview. To the contrary, the record demonstrates that Agent Bartel never offered any allegedly-untrue testimony that Attorney Henry discussed with the Court. Attorney Henry never made any type of proffer or statement suggesting that his recollection of Petitioner's interview conflicted with the account that Agent Bartel actually gave. In fact, Attorney Henry affirmatively stated that Agent Bartel's testimony was not objectionable. Accordingly, there was no conflict of interest.

2.  Ground Two

In "Ground Two" of her motion, Petitioner contends that her trial attorney "did not challenge the drug amounts" held against her at sentencing. Doc. # 187, p. 6. After careful review and consideration, Petitioner's claim for relief in this ground is likewise without sufficient legal merit. In reaching this conclusion, the Court finds it noteworthy that Petitioner's attorney did persuade this Court to grant a two level downward variance at sentencing.

The Presentence Report ("PSR") prepared by the United States Probation Office calculated Petitioner's base offense level at 38, determining that "she has been held accountable for 119 kilograms of crack cocaine." PSR ¶ 66. The PSR increased her offense level by two under United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(b)(1) based on the fact that she possessed a firearm, and further increased the level by two based on her "role in the offense" under U.S.S.G. § 3B1.3.3 ¶¶ 67, 69. These adjustments resulted in a total offense level of 42. Petitioner's attorney, objected to the upward adjustments but did not object to the quantity determination used to calculate the base offense level. See Revised Addendum to PSR, dated 02/23/09.

At Petitioner's sentencing hearing, Attorney Henry presented oral argument in support of his objection to the PSR's firearm enhancement. Doc. # 174, Sent. H'rg Tr., 05/27/09, at 9-20. The district court sustained the objection as to that enhancement. Id. at 22. Henry then presented

9

argument as to his objection to the proposed § 3B1.3 enhancement for abuse of trust, (Id. at 22-23), and the court overruled that objection. Id. at 25. Henry indicated he had no further objections to the PSR. Id. at 26. The court then found the total offense level to be 40, with a criminal history category of I, resulting in a Guidelines range of 292 to 365 months. Id. at 27. The Court then afforded Henry the opportunity to offer mitigating arguments.

Among other things, Henry argued that Petitioner had received relatively small amounts of money for her participation in the conspiracy. Id. at 33-34. Henry also remarked:

> There were also allegations that large amounts of drugs were being moved. But they were under the control, care and custody of individuals who had nothing to do with Ms. McKnight. Allegedly, this case was tried primarily on evidence that Albergail McFadden [McKnight's aunt] was a major player, that she was the one selling the drugs, there was no indication that Shanita McKnight ever sold, possessed or in any way received any drugs or received the proceeds directly from any drug sales.

Id. at 34.

Later in the hearing, the district court addressed the issue of what quantity of drugs should be attributed to Petitioner. This Court stated:

> The presentence report, based on the drug conviction, conspiracy drug conviction, puts a lot of drug weight and attributes that to this defendant. I think the report is written as it should be written. The question that I have is, how much of that drug activity, that drug weight, that drug dealers paid money to Ms. McKnight, how much of that would have occurred even without her information, and it may be difficult to determine.
>
> ***
>
> I'm trying to determine the nature of her role in the overall conspiracy. That's what [defense counsel] has asked me to do . . .
>
> ***
>
> The way the Guidelines work, if you aid and abet, you may have all of the drug weight attributed to you. That's part of it. That happens as a matter of routine in considering drug

10

weights and applying the Sentencing Drug Guidelines to those drug weights. I'm trying to get some sense of what she did, although reprehensible, that led to the 119 kilograms of cocaine, or whether her role was something less. Mr. Henry has said, he's mentioned the Guidelines that relate to role reductions in his memorandum and I think probably he'd have a difficult time convincing me that those necessarily ought to apply. But by the same token, in terms of a departure or a variance, because of the way the Guidelines work, do the Guidelines make her role greater than it was in the drug conspiracy conduct and in terms of the drugs that were attributed to her, the large amount of drugs attributed to her?

Id. at 57-59.

Attorney Henry attempted to address the court's question by arguing:

[T]here's no evidence linking her to any ownership, control or movement of any drugs or receipt of any substantial drug proceeds. So she's obviously not a major player, and the Guidelines certainly gives the court the discretion to consider those things . . . My client was a lower person on the totem pole, based on all of the evidence that's been produced at trial. She was not a major player, and her role is certainly one thing that the court needs to consider. It is a minimal role, and therefore, the court, in determining an appropriate sentence . . . needs to look at that.

Id. at 66-67.

After hearing argument on the matter, the district court commented that "[t]he question of whether or not the full force of the conspiracy and all the drug weights ought to fall on this defendant is a close[] question." Id. at 68-69. The court again noted that "[i]f you aid and abet a conspiracy . . . all the conduct of that conspiracy that is foreseeable can be attributed to you. All the drug weights. And a substantial amount of drug weight has been attributed to this defendant under the Guidelines." Id. at 69. The court held, however, that a two level downward variance or departure under 5K2.0 would be appropriate. Id. at 69-70. The court ultimately imposed a total sentence of 240 months — 52 months below the bottom end of the Guideline range determined at sentencing. Id. at 74.

Thus, although Attorney Henry did not object to the drug quantity attributed to Petitioner in her PSR, he did argue at the sentencing hearing that Petitioner's role in the conspiracy was minimal and stated that the "large amounts of drugs [that] were being moved . . . were under the control, care

11

and custody of individuals who had nothing to do with Ms. McKnight." Id. at 34. In this way, Attorney Henry did contest the quantity of drugs that were attributed to Petitioner. The district court spent a considerable amount of time wrestling with the drug-quantity issue, ultimately concluding that the drug quantity in the PSR was correct but that Petitioner should receive a two-level downward departure based on her limited role in the conspiracy.

Additionally, the Court notes that this was a reasonable tactic for counsel to employ as the drug weights attributed to defendant were 119 kilograms. Counsel would have had to successfully challenge over a 100 kilograms to make a difference in Petitioner's base offense level. The Court does not conclude that Attorney Henry's performance was deficient, and/or that Petitioner was prejudiced in any way.

3.  Ground Three

In "Ground Three" of her motion, Petitioner argues that Attorney Henry should have asked for an additional downward variance based on the disparity between powder cocaine and crack cocaine in the Guidelines. Doc. # 187, p. 8. Petitioner has also moved to supplement her § 2255 motion to include a request to be resentenced under the amended crack cocaine Guidelines effective November 1, 2011. Doc. # 196.[1] As Petitioner's Guideline range would be the same under the new amendment, she has offered no basis to vacate her current sentence. See Doc. # 211. After careful review and consideration, the Court concludes that this asserted ground for relief is without sufficient legal merit.

Specifically, Petitioner's PSR attributed 119 kilograms of crack cocaine to her, which resulted in a base offense level of 38. PSR ¶ 66. At the time of Petitioner's sentencing in May 2009,

---

[1]After careful review and consideration and for the reasons set forth herein, the Court finds that Petitioner is not entitled to the relief requested in her Motion to Reduce Sentence (Doc. # 196). Accordingly, her motion is DENIED in its entirety. (Doc. # 196).

the 2008 edition of the U.S.S.G. manual was in effect. Under that edition, the threshold quantity for offense level 38 was 4.5 kilograms or more of cocaine base (crack). See U.S.S.G. § 2D1.1(c)(1) (2008). Under the 2011 edition of the U.S.S.G. manual, which includes the amendments imposed under the Fair Sentencing Act, the threshold quantity for offense level 38 is 8.4 kilograms of cocaine base. See U.S.S.G. § 2D1.1(c)(1) (2011). Thus, even under the current Guidelines, the quantity of crack cocaine attributed to Petitioner (119 kilograms) is well over the threshold amount (8.4 kilograms) for her base offense level of 38. Accordingly, no change in her sentence is warranted, and Attorney Henry is correct when he states in his affidavit that Petitioner's "sentence would likely not have been different with a specific challenge to the crack to powder sentencing ratio disparity which was an issue in transaction at the time of [McKnight's] trial." Doc. # 199, p. at 2.[2]

4. Ground Four

In "Ground Four" of her motion, Petitioner claims that her attorney did not explain plea offers made by the Government and did not advise her of the sentencing ranges for the crimes with which she was charged. Doc. # 187, p. 9.[3] Petitioner asserts that had she understood these matters, she would have accepted a plea offer instead of going to trial. Id. In his affidavit, Attorney Henry states that he "conveyed and explained in detail all plea offers made to [Petitioner] before and during the trial of her case and allowed her to make the final determination on all such offers." Doc. # 199, p. 2. Further, Attorney Henry states that Petitioner "declined all plea offers, including one made during her trial which would have allowed her to plead to misconduct in office with a

---

[2] Specifically, the Court notes that it has not imposed sentences based on a 100 to 1 ratio.

[3] Petitioner concedes that she was aware of plea offers being made: "I was offered a plea to plead to the extortion charge with the drug charges dropped before the jury trial was set and again during trial." Doc. # 187, p. 9.

13

recommendation of a probationary sentence." Id. at 3. Attorney Henry explains that Petitioner declined the offers because she "continued to declare her innocence" and did not want to agree to a plea that could end her law enforcement career. Id. Finally, Attorney Henry states that Petitioner "was informed of the potential sentencing range she would face if she proceeded to trial but was cautioned that the final determination of this exposure would not be possible to determine until the trial itself had been concluded." Id. After a careful review of the record, this Court concludes that Petitioner has not satisfied her evidentiary burden as to her allegation that trial counsel failed to properly advise her of plea offers made by the government, and the potential sentencing ranges for the crime for which she was charged.

The Fourth Circuit has provided some guidance on this issue in the case of U.S. v. Merritt, 102 Fed.Appx. 303 (4th Cir. 2004). There, the Court noted its inquiry required a determination of whether defendant had shown that his trial counsel provided him gross misadvice regarding his sentencing exposure, and, if so, whether but for this gross misadvice, there is a reasonable probability that he would have accepted the plea agreement specifying a sentence of eighteen-months' imprisonment. The Court noted that:

> [i]n conducting this inquiry, we first recognize that there is some disagreement within the circuits as to whether objective evidence, in addition to the defendant's statement, is required to establish an ineffective assistance of counsel claim in this context. Compare Magana, 263 F.3d at 547 n. 1 (suggesting there is no need for additional evidence so long as defendant shows "reasonable probability" of a different outcome), and Gordon, 156 F.3d at 381 (holding that sentencing "disparity provides sufficient objective evidence-when combined with a petitioner's statement concerning his intentions-to support a finding of prejudice under Strickland "), with Diaz v. United States, 930 F.2d 832, 835 (11th Cir.1991) (finding awareness of plea offer and after-the-fact testimony concerning desire to plea insufficient), and Johnson v. Duckworth, 793 F.2d 898, 902 n. 3 (7th Cir.1986) (expressing doubt as to whether defendant's self-serving, post-conviction testimony regarding his intent as to plea offer would be sufficient, by itself, to establish the "reasonable probability" that defendant would have accepted the plea). In dismissing Merritt's claim, the district court appeared to adopt the reasoning of the latter line of cases, because in holding that Merritt failed to make

14

an initial showing of misadvice, it stated "only [Merritt's] post hoc bald assertion exists to prove that he would have accepted the initial 18-month plea, which the Court finds insufficient to establish prejudice."

Merritt, 102 Fed Appx at 307-308.

The Fourth Circuit continued on to state as follows:

[w]e find it unnecessary to resolve what type of evidence is needed to establish an ineffective assistance of counsel claim in this context because, even if we were to adopt the line of cases supporting the proposition that a " post hoc assertion" by defendant is sufficient to support such a claim, [defendant] nonetheless fails to establish ineffective assistance. In evaluating the effectiveness of trial counsel's advice regarding the desirability of the plea bargain and attendant sentence exposure, we agree with the Third Circuit's statement that although it is difficult to "state precisely what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure .... we can say, however, that familiarity with the structure and basic content of the Guidelines ... has become a necessity for counsel who seek to give effective representation."

Merritt, 102 Fed Appx at 308. (citing United States v. Day, 969 F.2d 39, 43 (3rd Cir.1992)).

In this case, Petitioner has not produced any direct evidence to support her contention beyond her own self-serving statements found in her Petition and memorandum. Attorney Henry, by contrast, has given a plausible and appropriately detailed description of his discussion with Petitioner regarding plea offers which were made and the consequences of accepting or rejecting the same. Considering Petitioner's statements in a light most favorable to her, notably, she states in ground four of her petition, that "I was offered a plea to plead to the extortion charge with the drug charges dropped before the jury trial was set and again during trial." She further states my lawyer "never went into detail or explained the plea offer to me" and failed to "advise [me] pf the sentence I was facing." Counsel states, in his affidavit that he "explained in detail all plea offers made to movant before and during trial ....and allowed her to make the final determination on all such matters." Further, he states the Petitioner "declined all plea offers, including one made during her

15

trial" and stated she "could not plead to something she did not do and continued to declare her innocence to all charges throughout her trial and sentencing." It is clear that Petitioner knew a plea offer was made to her before and during trial "to plead to the extortion with the drug charges dropped." She admits this. It is also reasonable to conclude that the Petitioner knew that by dismissing the drug charges she would face a lesser sentence.[4] Plea offers are not made during trial that increase a potential sentence, but are made to limit exposure to a longer sentence. The Petitioner's admission that she was told the drug charges would be dropped before and during trial if she pled to extortion, confirm defense counsel's statements that he "explained in detail all plea offers made to [Petitioner] before and during the trial of her case." On this evidence, including Petitioner's acknowledgment that she was fully aware of plea offers made before and during trial, no relief is warranted. This evidence supports the conclusion that the Petitioner wanted a trial because she "could not plead to something she did not do and continued to declare her innocence to all charges." This evidence leads to the conclusion that the Petitioner was not going to plead to any charge "that would end her law enforcement career."[5] Accordingly, after careful review and consideration, the Court cannot conclude that his representation was ineffective . See Rosario–Dominguez v. United States, 353 F.Supp.2d 500, 520 (S.D.N.Y.2005) (dismissing a 28

---

[4] The Court notes that the statutory maximum for Count Two, Extortion by a Public Employee in violation of 18 U.S.C. § 1951 is 20 years. The Statutory maximum for Count One, Conspiracy to Distribute 50 grams or more of cocaine and 5 kilograms or more of cocaine in violation of 21 USC §§ 841(a)91), (b)(1)(A) and 846 is Life.

[5] The evidence of record presents no conflict in testimony between the Petitioner and counsel that requires a hearing to resolve. Again, the Petitioner acknowledges she was aware of plea offers that would have reduced her imprisonment exposure before and during trial. She rejected such offers and proceeded to trial. Even if specifics regarding potential sentences were not discussed with her (defense counsel states they were), the evidence supports the conclusion that Petitioner would still have proceeded to trial. See generally, Hooper v. Garraghty, 845 F.2d 471 (4th Cir. 1988).

U.S.C. § 2255 petition where the defendant "submitted only conclusory and/or self-serving affidavits on the issue of whether [trial counsel] communicated plea offers to him"); see also Ashley v. United States, 17 Fed. Appx. 306, 309 (6th Cir.2001) (affirming dismissal of a 28 U.S.C. § 2255 petition where there was "little, if any, direct evidence to support testimony on behalf of either party," therefore defendant failed to satisfy his evidentiary burden) (internal quotations omitted); Haley v. United States, 3 Fed. Appx. 426, 429 (6th Cir.2001) (affirming dismissal of a 28 U.S.C. § 2255 petition where defendant's contention "that he would have accepted the plea offer [was] ... self-serving and equivocal).

This Court has carefully considered each of Petitioner's grounds for relief. As previously noted, in order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. U.S. v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (citing Williams v. Kelly, 816 F.2d 939, 946-47 (4th Cir.1987)). This Court is not sufficiently persuaded that Petitioner has satisfied either prong in relation to any of her asserted grounds for relief. In each instance Petitioner has made an assertion that counsel has failed to do something that Petitioner feels he should have done, but she has not shown that counsel's performance fell below an objective standard of reasonableness, much less that any deficiency in counsel's representation resulted in prejudice to Petitioner.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED** (Doc. # 187) and the Government's motion for summary judgment is **GRANTED** (Doc. # 200). This action is hereby **DISMISSED**.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 2253. Applying the provisions set forth at 28 U.S.C. § 2253 (c), this Court concludes that it is appropriate to issue a certificate of appealability as to all issues raised herein.

**IT IS SO ORDERED**.

s/Terry L. Wooten

July 27, 2012  TERRY L. WOOTEN
Florence, SC  United States District Judge